FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 07 2012 ★
BROOKLYN OFFICE

Rec'd 2/11/12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

HELEN ROGERS,

                Plaintiff,

v.

ROOSEVELT UNION FREE SCHOOL
DISTRICT, ROBERT WAYNE-HARRIS,
DONALD HUMPHREY, FAITH
VAUGHN-SHAVLIO, DONALD CRUMMELL,
BARBARA SOLOMON, TERRI MCGRATH,
YVES MONPOINT, and JONATHAN FINCH,

                Defendants.

----------------------------------------------------------------x

**MEMORANDUM & ORDER**
09-CV-3862 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Helen Rogers, proceeding *pro se*, brings the above-captioned action against Defendants Roosevelt Union Free School District ("Roosevelt"), Robert Wayne-Harris, Donald Humphrey, Faith Vaughn-Shavlio, Donald Crummell, Barbara Solomon, Terri McGrath, Yves Monpoint and Jonathan Finch pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act ("Title VII") and the New York State Human Rights Law ("NYSHRL"), alleging that Defendants discriminated against her on the basis of age and disability and retaliated against her for protesting their discriminatory practices. Defendants moved for summary judgment, and Plaintiff cross moved for summary judgment.[1] The Court heard argument on September 18,

---

[1] Plaintiff filed a motion styled as a cross motion for summary judgment, but the motion appears to be only an opposition to Defendants' motion for summary judgment. (Pl. Notice of Motion ¶ 2 ("[Plaintiff's] motion for summary judgment will move this Honorable Court . . . for an order for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure

2012.[2] For the reasons set forth below, Defendants' motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied.

I. **Background**

Plaintiff began working for Roosevelt as a science teacher in 1984. (Compl. ¶ 17.) In May of 2001, Plaintiff was injured at work, when she slipped on an unknown substance. (Pl. Exs. at 182, Docket No. 78-3 at 61.) Plaintiff filed a claim for workers' compensation and, in November of 2001, the Workers' Compensation Board determined that Plaintiff was owed $150.00. (Pl. Exs. at 185–86, Docket No. 78-3 at 64–65.) On June 3, 2002, Plaintiff underwent abdominal surgery. (Pl. Summ. J. Mem. 5.) After Plaintiff returned to school, a student ran into her, causing Plaintiff to develop a large, inoperable hernia. *Id.* As a result of these accidents at work, as well as an automobile accident, Plaintiff permanently injured her knees, back, neck and head. *Id.*

From 1984 until 2002, Plaintiff was assigned to teach high school science on the first floor. (Pl. 56.1 Reply at 36.) In 2002, Plaintiff was assigned to teach general science in the middle school, which was located on the second floor of the same building. *Id.* In September of 2002, Plaintiff requested a reasonable accommodation of a single classroom on the first floor. (Compl. ¶ 23.) Plaintiff repeatedly requested that she be assigned to a single classroom on the first floor. (Compl. ¶ 26.) At the beginning of the 2006–2007 school year, Plaintiff again

---

dismissing Defendants' motion for summary judgment as a matter of law against the Plaintiff, Helen Rogers.")).

[2] At oral argument, the Court dismissed Plaintiff's claims under Title VII, the ADA and the ADEA as to the individual defendants only.

requested that she be assigned to a stationary room on the first floor.[3] (Pl. Exs. at 146, Docket No. 78-3 at 25.) Plaintiff was assigned to classrooms on the first floor, but Roosevelt could not give her a single classroom because it had limited laboratory space. (Def. Summ. J. Mem. 2; Silverman Decl. Ex. LL; Def. 56.1 ¶¶ 37–38; Pl. 56.1 Reply at 37.) Plaintiff remained in classrooms on the first floor until she retired in 2010. (Def. Summ. J. Mem. 2–3; Deposition of Helen Rogers ("Rogers Dep.") at 25:10–26:13.) However, Plaintiff was never provided a stationary classroom on the first floor with a laboratory. (Compl. ¶¶ 53–60; Rogers Dep. 146:2–169:19.)

Plaintiff alleges that she submitted a number of additional requests and complaints between 2006 and 2009. In September of 2006, Plaintiff requested an exemption from teaching integrated classes as an accommodation. (Compl. ¶ 34.) On October 13, 2006, Plaintiff sent a letter to defendant Humphrey complaining about missing textbooks. (Pl. Exs. at 162, Docket No. 78-3 at 41.) On October 11, 2007, Plaintiff requested a storage space or locker to keep her supplies. (Compl. ¶ 44.) On October 17, 2007, Plaintiff requested to be returned to her original position teaching living environment and biology. (Compl. ¶ 45.) On June 6, 2008, Plaintiff submitted a "preference form" asking to teach high school biology, living environment and human anatomy, but the only requested assignment she received was living environment. (Rogers Dep. 166:17–167:17.) In November of 2007, Plaintiff claims that she heard for the first

---

[3] During the 2003–2004 school year, Plaintiff states that she obtained a resolution on a discrimination complaint ("DC-120") that she had filed with the workers' compensation board. (Pl. Summ. J. Mem. 6; Pl. 56.1 Reply at 4, 19, 21, 25, 37, 44.) According to Plaintiff, a judge ordered Roosevelt to assign Plaintiff to a classroom on the first floor, but Defendants did not comply with the order until the 2006–2007 school year. (Pl. Summ. J. Mem. 6; Pl. 56.1 Reply at 4.) Plaintiff has not submitted any evidence of this court order or the disposition of this action, except for a memo that she sent on June 13, 2003 to her union and Roosevelt, which says, "On 6/13/03 in your absence the Honorable Law Judge Holley, is requesting that you are to forward your written plan and settlement offer to his office on the tentative settlement reached and agreed upon between the parties as soon as possible." (Pl. Exs. at 236; Docket No. 78-4 at 35.)

time about the after school program, which provided participating teachers with additional income. (Compl. ¶ 48.) Plaintiff also alleges that she did not receive a letter, as all other teachers did, indicating how much sick time she had remaining. (Compl. ¶ 49.) On April 24, 2009, Plaintiff claims that she was informed that she had lost her seniority in the science department because she took her medical leave. (Compl. ¶ 62.) On June 10, 2009, Plaintiff learned that errors were made in her health insurance coverage deductions and that she had to reimburse the district $473.92. (Compl. ¶¶ 66–67.)

On October 14, 2006, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of age, race, gender, disability and retaliation. (Declaration of Lewis Silverman ("Silverman Decl.") Ex. FF.) On September 29, 2008, the New York District Office of the EEOC issued a determination favorable to Plaintiff. (Pl. Exs. at 8, Docket No. 78-1 at 7.) On March 27, 2009, Plaintiff filed another charge with the EEOC, alleging that Roosevelt had retaliated against her because of the favorable determination that she received in September of 2008. (Pl. Exs. at 3–4, Docket No. 78-1 at 2–3.) On June 12, 2009, Plaintiff received a right to sue letter from the EEOC. (Pl. Exs. at 5–9, Docket No. 78-1 at 4–8.) Plaintiff retired from Roosevelt High School in June of 2010. (Def. 56.1 ¶ 3; Pl. Reply 56.1 at 1.)

## II. Discussion

### a. Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012); *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011).

The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000). The Second Circuit has made clear that "an extra measure of caution is merited" when considering summary judgment in discrimination cases because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted). Finally, the court "must construe the *pro se* plaintiff's claims liberally in deciding the motion for summary judgment." *Thompson v. Tom Vazquez Janitorial*, No. 05 Civ. 808, 2006 WL 3422664, at *2 (E.D.N.Y. Nov. 28, 2006) (citing *Sawyer v. Am. Fed'n of Gov't Employees, AFL-CIO*, 180 F.3d 31, 36 (2d Cir. 1999)); *see also Ferran v. Town of Nassau*, 471 F.3d 363, 369 (2d Cir. 2006) ("This Court will construe briefs submitted by pro se litigants liberally.").

### b. ADEA Claim

The Second Circuit has held that claims brought under the ADEA are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Gorzynski v. Jet Blue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). Under the *McDonnell*

5

*Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id.* If the plaintiff does so, the burden shifts to the defendant "to articulate 'some legitimate, nondiscriminatory reason' for its action." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant sets forth a legitimate reason, the burden shifts back to the plaintiff to show that the proffered reason is a mere pretext and that the employer's decision was the result of discrimination. *Id.* The plaintiff must show that "age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). In order to establish a prima facie case of age discrimination, a plaintiff must demonstrate "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107. It is undisputed that Plaintiff has met the first two elements. However, Plaintiff cannot establish that she suffered an adverse employment action.

The Second Circuit has defined "an adverse employment action as a 'materially adverse change' in the terms and conditions of employment." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). A change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). Examples of such a change include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (citing *Terry*, 336 F.3d at 138). Plaintiff claims that she was coerced into retiring "because the terms and condition of employment were not changing for betterment." (Pl. 56.1 Reply at 41; *see also* Pl. Exs. at 153, Docket No. 78-3 at 32) ("Please be

6

advised that due to what I feel to be continuous efforts done by *the Roosevelt School District to force me to abandon my job, quit, be fired or suffer*, die and/or disappear, I am thinking about taking an Early Retirement.") (emphasis in original)). Construing her claim liberally, Plaintiff appears to allege a constructive discharge claim.

A constructive discharge is "functionally the same as an actual termination" and therefore is considered an adverse employment action. *Pa. State Police v. Suders*, 542 U.S. 129, 148 (2004). The standard for constructive discharge is demanding, and it "cannot be proven merely by evidence that an employee . . . preferred not to continue working for that employer . . . [or that] the employee's working conditions were difficult or unpleasant." *Madray v. Long Island Univ.*, 789 F. Supp. 2d 403, 409–10 (E.D.N.Y. 2011) (alterations in original) (quoting *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993)). Rather, a constructive discharge occurs only "when an employer 'intentionally creates a work atmosphere so intolerable that [the plaintiff] is forced to quit involuntarily.'" *Borski v. Staten Island Rapid Transit*, 413 F. App'x 409, 411 (2d Cir. 2011) (alteration in original) (quoting *Terry*, 336 F.3d at 152). Thus, constructive discharge requires evidence (1) that the employer acted deliberately or intentionally in bringing about the complained of work conditions, and (2) that the conditions were "intolerable." *Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004). In order to meet the first requirement, the plaintiff must, at a minimum, show that the employer acted deliberately in bringing about the intolerable work conditions. *Id.* at 229–30; *see also Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000) ("[S]omething beyond mere negligence or ineffectiveness is required."). Next, in order to determine whether the work conditions were "so intolerable as to compel resignation," the conditions must be "assessed objectively by reference to a reasonable person in the employee's position." *Petrosino*, 385 F.3d at 230.

7

Plaintiff has failed to provide evidence of work conditions so intolerable that a reasonable person would be compelled to resign. Plaintiff claims that Defendants assigned her to multiple classrooms; refused to give her supplies, including textbooks and teaching manuals; failed to provide her with a locker or storage room for her supplies; omitted her from the "all high school teachers" e-mail listserv; refused to accommodate her teaching preferences; changed failing grades to passing grades; made errors in her health insurance deductibles; miscalculated her sick days, which affected her position on the seniority list; and failed to inform her of the opportunity to participate in the after school program. (Compl. ¶¶ 32–48.) At the outset, the Court notes that a number of these allegations are belied by the evidence. However, even assuming Plaintiff's allegations are true, Plaintiff cannot meet the demanding constructive discharge standard.

As discussed in more detail below, Plaintiff was not the only teacher who experienced changes to her grades, errors in her health insurance deductibles or a miscalculation of her sick days. Moreover, many of Plaintiff's complaints — insufficient supplies, miscommunications, clerical errors and denial of preferred classes — are common frustrations that occur in the employment context and are not so intolerable as to compel a reasonable person to resign. *See Miller v. Praxair, Inc.*, 408 F. App'x 408, 410 (2d Cir. 2010) *cert. denied* 131 S. Ct. 3067 (2011) (holding that "routine disagreements with supervisors or mild criticisms . . . are simply insufficient to establish the sort of 'intolerable' working conditions necessary to a constructive discharge claim"); *Nicholls v. Philips Semiconductor Mfg.*, 760 F. Supp. 2d 407, 416–17 (S.D.N.Y. 2011) ("As the Second Circuit has made clear, constructive discharge is not established through evidence that Plaintiff was 'dissatisfied with the nature of his assignments,' that Plaintiff 'feels that the quality of his work has been unfairly criticized,' or that Plaintiff's 'working conditions were difficult or unpleasant.'" (quoting *Stetson v. NYNEX Serv. Co.*, 995

8

F.2d 355, 360 (2d Cir. 1993)). The Court does not doubt that Plaintiff was frustrated by her working conditions, but she has not provided any evidence from which a jury could find a constructive discharge or any other adverse employment action. Plaintiff's ADEA claim is dismissed.[4]

### c. ADA Claims

#### i. Failure to Accommodate

Plaintiff alleges that defendant Roosevelt violated the ADA by refusing to provide her with the following requested accommodations: (1) a single, stationary classroom on the first floor with a laboratory; (2) a locker or storage room for supplies; and (3) an exemption from teaching integrated classes.[5] (Compl. ¶¶ 28, 34–36, 44.) The ADA prohibits an employer from refusing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). The term "reasonable accommodation" means "[m]odifications or adjustments to the work environment . . . that enable an individual with a disability who is qualified to perform the essential functions of that position" as well as "[m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. §§ 1630.2(o)(1)(ii)–(iii). "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1).

---

[4] It is not clear from Plaintiff's papers if she is bringing a Title VII claim, and, if she is, what the basis of that claim is. Regardless, any Title VII claim would be dismissed because Plaintiff cannot establish an adverse employment action. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (an adverse employment action is the same under the ADEA and Title VII).

[5] To the extent Plaintiff has also brought a claim for discriminatory discharge under the ADA, that claim fails because Plaintiff cannot establish an adverse employment action.

9

In order to establish a prima facie case for failure to accommodate, a plaintiff must show that (1) she is a person with a disability under the meaning of the ADA, (2) her employer is a covered entity, (3) the plaintiff could perform the essential functions of her job with an accommodation, and (4) the defendant refused to make such an accommodation.[6] *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 96–97 (2d Cir. 2009). "The plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment, including the existence of a vacant position for which she is qualified." *Id.* at 97. The requested accommodation must be reasonable and connected to the plaintiff's disability. *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995); *see also Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 367 (E.D.N.Y. 2012) ("[T]here must be some sort of causal connection between the Plaintiff's disability and the requested accommodation."). "Once the plaintiff has demonstrated that there is a 'plausible accommodation, the costs of which, facially, do not clearly exceed its benefits,' the defendant bears the burden of proving that the requested accommodation is not reasonable." *McElwee v. County of Orange*, No. 11 Civ. 4366, --- F.3d ----, 2012 WL 5519354, at *5 (2d Cir. Nov. 15, 2012) (quoting *Borkowski*, 63 F.3d at 138).

### 1. Stationary Classroom

Plaintiff claims that Defendants violated the ADA when they failed to provide her with a single, stationary classroom on the first floor. (Compl. ¶ 28.) Defendants contend that they provided Plaintiff with a reasonable accommodation by assigning her to classrooms on the first

---

[6] Claims alleging violations of the ADA are also analyzed under the *McDonnell Douglas* burden-shifting framework. *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009).

10

floor that were in close proximity to each other.[7] (Def. Summ. J. Mem. 12; Silverman Decl. Ex. EE.) The Court agrees.

A reasonable accommodation does not require that the employer "provide every accommodation the disabled employee may request, so long as the accommodation provided is reasonable.'" *D'Eredita v. ITT Corp.*, 370 F. App'x 139, 141 (2d Cir. 2010) (quoting *Fink v. N.Y.C. Dep't of Personnel*, 53 F.3d 565, 567 (2d Cir. 1995)). Plaintiff claims that she has severe lower back pain, hypertension and hernia, which limit her ability to sit for long periods of time, walk long distances and carry heavy objects. (Pl. Exs. at 201–03, Docket No. 78-3 at 80, 78-4 at 1–2.) As a result of these limitations, Plaintiff repeatedly requested a single classroom on the first floor with a laboratory. At the beginning of the 2006–2007 school year, Defendants moved Plaintiff to a classroom on the first floor, and Plaintiff no longer had to climb up and down the stairs. Defendants did not assign Plaintiff to a single classroom because the first floor of the school had limited laboratory space. (Def. Summ. J. Mem. 12; Affidavit of John Curcio ("Curcio Aff.") ¶ 9 ("Due to limited laboratory space in the High School building, the District is unable to assign teachers to a laboratory classroom if such a class does not require a laboratory. It was necessary that Complainant be assigned to at least two (2) classrooms as she did not require laboratory space for all of the classes she taught.")). Defendants assigned Plaintiff to classrooms on the first floor, which were located on the same corridor in close proximity to each other. (Curcio Aff. ¶ 12; Silverman Decl. Ex. BB.)

---

[7] Defendants also argue that Plaintiff cannot establish that she is disabled within the meaning of the ADA. Plaintiff submitted a number of medical records regarding her physical impairments: severe lower back pain, hypertension and hernia. (Pl. Exs. at 201–03, Docket No. 78-3 at 80, 78-4 at 1–2.) The medical records indicate that Plaintiff is not able to sit for a long period of time, walk long distances or carry heavy objects. (Pl. Exs. at 201–03, Docket No. 78-3 at 80, 78-4 at 1–2.) Plaintiff also provided disability certificates dated November 10, 1997 and March 30, 1998. (Pl. Exs. at 214–15, Docket No. 78-4 at 13–14.) The Court assumes without deciding that Plaintiff would be able to establish at trial that she is disabled.

Although Plaintiff did not receive the specific accommodation she requested, she has not established that Defendants failed to provide her with a reasonable accommodation that would allow her to perform the essential functions of her job. *See Raffaele v. City of New York*, No. 00 Civ. 3837, 2004 WL 1969869, at *16 (E.D.N.Y. Sept. 7, 2004) (Accommodations need only be "sufficient to meet the job-related needs of the individual being accommodated." (citation omitted)); *Querry v. Messar*, 14 F. Supp. 2d 437, 445 (S.D.N.Y. 1998) ("An employer need only offer 'a reasonable accommodation'; it need not provide the employee with the accommodation of her choice."); *Yeung v. Loudoun Cnty. Public Schools*, No. 02 Civ. 775, 2003 WL 23314266, at *2 (E.D. Va. Jan. 17, 2003) ("Although Plaintiff is entitled to a reasonable accommodation, she is not necessarily entitled to the specific accommodation she requests. Due to the class schedule and the seniority system used to assign classrooms, Plaintiff's request for a single classroom was unreasonable."). Plaintiff has not offered any evidence from which a jury could find that Defendants, in assigning her to multiple classrooms on the first floor in close proximity to each other, refused to provide her with a reasonable accommodation.

### 2. Locker or Storage Room for Supplies

Plaintiff next claims that Defendants refused to provide her with the reasonable accommodation of a storage or locker for her supplies. However, the undisputed evidence establishes that Defendants provided Plaintiff with a cabinet for storage. On October 11, 2007, Plaintiff complained to defendant McGrath that she did not have a locker or storage room for any supplies. (Compl. ¶ 44.) Plaintiff was provided with a cabinet in November of 2007. (Silverman Decl. Ex. N.) Plaintiff informed Defendants that she did not want the cabinet because it was "filthy." *Id.* Defendants offered to clean the cabinet for Plaintiff. *Id.* Although Plaintiff objects to the fact that she was not provided with a cabinet until November of 2007, she

does not dispute that she was provided a cabinet in response to her request. (Pl. 56.1 Reply 47.) Plaintiff's claim that Defendants failed to accommodate her by refusing to provide her with a cabinet is without merit.

### 3. Exemption from Teaching Integrated Classes

Plaintiff claims that in September of 2006, she requested an exemption from teaching integrated classes as a reasonable accommodation. (Compl. ¶ 34.) Defendants do not dispute that Plaintiff's request was denied, arguing instead that pursuant to law, "special education students are 'mainstreamed' or included in regular classes to the extent that their special needs permit." (Def. Summ. J. Mem. 17.) Presumably, Defendants are claiming that a request to be exempt from integrated classes is not reasonable, since special education students must be mainstreamed under the law. Regardless, Plaintiff has failed to demonstrate a causal connection between her disability and her request to be exempt from teaching integrated classes. *See Robinson v. Roosevelt Union Free Sch. Dist.*, No. 10 Civ. 834, 2012 WL 1980410, at *9 (E.D.N.Y. May 31, 2012) (rejecting the plaintiff's claim that due to her poor mobility, the plaintiff could not perform the essential functions required when teaching an integrated class); *Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 367 (E.D.N.Y. 2012) ("[T]here must be some sort of causal connection between the Plaintiff's disability and the requested accommodation.").

Plaintiff has not established that Defendants denied her a reasonable accommodation in violation of the ADA, and, therefore, her claim for failure to accommodate is dismissed.[8]

---

[8] Plaintiff also claims that she requested volunteers and qualified assistants as a reasonable accommodation, (Compl. ¶¶ 35–36), but she cannot remember when she made the request and acknowledges that very few teachers were provided with qualified assistants, (Def. Summ. J. Mem. 17.) Although Plaintiff did not receive a qualified assistant or volunteer, she was provided with a special education teacher to support her integrated classes. *Id.* Moreover,

13

### ii. Retaliation

Plaintiff next alleges that Defendants violated the ADA by retaliating against her. To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) the employee was engaged in a protected activity, (2) the employer was aware of that activity, (3) the employee suffered an adverse employment action, and (4) there was a causal connection between the protected activity and the adverse employment action. *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001). Defendants do not dispute that Plaintiff can establish the first two elements. (Def. Summ. J. Mem. 18.) Plaintiff engaged in protected activity, when she filed complaints of discrimination with the New York State Division of Human Rights and EEOC in October of 2006, and Roosevelt was aware of this activity.[9] *Id.* Defendants argue that Plaintiff cannot establish that she suffered any adverse employment action or a causal connection between any adverse action and her protected activity.

Adverse employment action is broader in the retaliation context than the discrimination context, and, therefore, in some instances, a plaintiff can establish a retaliation claim, even if he or she cannot establish a discrimination claim. *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010). Nevertheless, in order to support a claim for retaliation, the adverse action "must be harmful to the point that [it] could well dissuade a reasonable worker from making or supporting

---

Plaintiff has not offered any evidence to demonstrate a causal connection between her disability and this accommodation request. Plaintiff's claim is without merit.

[9] Plaintiff has argued various theories in support of her retaliation claim. At oral argument, Plaintiff claimed that she filed a complaint with the New York State Division of Human Rights in 2000 or 2001, and after that complaint, Defendants began retaliating against her. In her opposition papers, Plaintiff argued that in 2003 she obtained a settlement from her DC-120 claim, after which Defendants began to retaliate against her. (Pl. 56.1 Reply at 68.) The Complaint does not mention the 2001 complaint or 2003 settlement. (Compl. ¶ 27.) In any event, Plaintiff cannot sustain a claim for retaliation based on her 2001 complaint or 2003 settlement because she cannot establish an adverse employment action or an inference of retaliation.

14

a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *see also Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases."). Plaintiff alleges a number of instances of retaliation: (1) changes to her students' grades; (2) e-mails Plaintiff did not receive; (3) denials of her teaching preferences; (4) untimely evaluations; (5) errors in her health insurance deductions; (6) miscalculation of sick days; (7) loss of seniority; and (8) failure to provide her with the necessary textbooks. None of these actions, even if viewed collectively, can support a finding that Plaintiff suffered an adverse action or an inference that the action was taken for retaliatory reasons.

With regard to a number of the alleged retaliatory acts — grade changes, errors in her health insurance deductions, and miscalculation of sick days — Plaintiff was not the only teacher affected. Roosevelt's principal, defendant Humphrey, changed the failing grades of students in other teacher's classes as well. (Silverman Decl. Ex. BB.) In *Robinson v. Roosevelt Union Free Sch. Dist.*, a teacher alleged that defendant Humphrey discriminated against her by changing the failing grades of some of her students. *Robinson*, 2012 WL 1980410, at *4. Judge Feuerstein rejected the plaintiff's claim, noting that "[i]t is undisputed that Humphrey directed grade changes not just for plaintiff's students, but for students of other teachers, as well, and there is no evidence that the direction was based upon discriminatory reasons." *Id.* at *8. Here, Defendants have presented undisputed evidence that multiple teachers had the failing grades of some of their students changed by defendant Humphrey, and Plaintiff has not presented any evidence from which a jury could infer that these changes were made for retaliatory reasons. Similarly, the undisputed evidence demonstrates that Plaintiff was not the only teacher affected by the health insurance deductible error and the sick day miscalculation, and Plaintiff has not presented any

15

evidence that these errors occurred for retaliatory reasons.[10] (Def. Summ. J. Mem. 19–20; Pl. 56.1 Reply at 7–8; Silverman Decl. Exs. T, I.)

A number of the other alleged acts — omission from the e-mail list, untimely teaching evaluation and failure to supply textbooks — are not supported by the evidence. Although at one point in time Plaintiff was not receiving the "all high school teachers" e-mails, Plaintiff's concerns were addressed by Roosevelt's technology support department immediately. (Def. Summ. J. Mem. 18–19; Silverman Decl. Exs. I, L.) Shortly after Plaintiff complained, she began receiving the "all high school teachers" e-mails. (Silverman Decl. Exs. L, M.) Plaintiff claims that Defendants did not timely conduct her teaching evaluation, but the undisputed evidence shows that district policy does not specify when the evaluation must be conducted. (Def. Summ. J. Mem. 19, Ex. AA.) Plaintiff's annual evaluation was conducted on June 23, 2009 and discussed with Plaintiff on June 25, 2009. *Id.* Plaintiff has not provided any evidence from which the Court could find that this evaluation was untimely.

Plaintiff also alleges that Defendants retaliated against her by failing to provide her with necessary textbooks and other teaching supplies. On September 17, 2007, Plaintiff complained to defendant Vaughn-Shavlio that she had not received the appropriate textbooks and had not been included in textbook selection. (Compl. ¶ 38.) Plaintiff complained to defendant McGrath that she did not have the anatomy teaching manual she needed on September 26, 2007 and that she had not received textbooks for the school year on September 27, 2007. (Compl. ¶¶ 39–40.)

---

[10] Plaintiff also claims that the error in her sick days calculation affected her seniority. Assistant Superintendent for Human Resources John Curcio sent an e-mail to Plaintiff, informing her that the seniority list was only used to abolish positions and because Plaintiff was one of the more senior teachers in the district, Plaintiff was not at risk of having her position abolished. (Silverman Decl. Ex. W.) Curcio also informed Plaintiff that "[t]here are no other decisions made, or benefits to be received, given your specific placement on the list." *Id.* Plaintiff has not presented any evidence from which a jury could infer that any action taken with regard to her seniority has negatively affected her.

On September 27, 2007, defendant McGrath responded to Plaintiff's complaints by asking her to put together an order of supplies as soon as possible and asking which teaching manual Plaintiff needed. (Silverman Decl. Ex. J.) On October 5, 2007, defendant McGrath e-mailed Plaintiff asking if she "had the time to put together an order of supplies and materials? I received the order placed for Living Environment within 2 weeks of submission, so I know the turn-around time is quick right now." *Id.* On October 10 and 11, 2007, Plaintiff complained to defendant McGrath that she did not have textbooks for some of her students and that she could not effectively teach without adequate books and supplies. (Compl. ¶¶ 43–44.) On October 11, 2007, defendant McGrath informed Plaintiff that she had finally been given approval to put in more orders and that Plaintiff's classes were not the only classes without adequate textbooks. *Id.* Although Plaintiff takes issue with the delay in getting her textbooks, a number of other teachers were without textbooks at the beginning of the school year due to budget issues at the school. Moreover, Plaintiff has been complaining about inadequate supplies since November of 2001, if not earlier. (Pl. Exs. at 219, Docket No. 78-4 at 18; (Pl. Exs. at 298, Docket No. 78-5 at 31.) Plaintiff has not provided any evidence of an adverse action or that Defendants deprived her of necessary books and supplies out of retaliation.

Finally, Plaintiff claims that Defendants retaliated against her by refusing to assign her to the classes she preferred. On June 6, 2008, Plaintiff submitted a teacher preference form, where she indicated that she would like to teach biology (honors), living environment (honors) and human anatomy. (Rogers Dep. 165:5–12; Pl. Exs. at 365, Docket No. 78-6 at 21.) Plaintiff was assigned to teach ecology, environmental science and living environment. (Rogers Dep. 26:4–7.) Plaintiff claims that every other science teacher was assigned to his or her preferred classes. Plaintiff's only evidence to support this assertion is her testimony that, when the teachers were

filling out the forms, she heard their preferences and then saw the next year that they were all teaching the classes they had requested. (Rogers Dep. 166:17–25.) Plaintiff concedes that she never saw any of the other teacher's forms. (Rogers Dep. 167:15–17.) Plaintiff received one of the three classes that she requested, although it is not clear from the record whether the living environment class she was assigned to teach was an honors class. Regardless, Plaintiff has not presented any evidence from which a jury could infer that the denial of her other teaching preferences was an adverse action taken in retaliation for her 2006 complaint. Plaintiff's retaliation claim is dismissed.[11]

### d. Section 1983

Plaintiff also brings a claim under § 1983, alleging that Defendants violated her constitutional right to equal protection under the law.[12] "[Section] 1983 and the Equal Protection Clause protect public employees from various forms of discrimination, including hostile work

---

[11] Having dismissed Plaintiff's federal discrimination claims, Plaintiff's discrimination claims brought under the NYSHRL are also dismissed. *See Kercado-Clymer v. City of Amsterdam*, 370 F. App'x 238, 242 n.1 (2d Cir. 2010) (courts apply "federal standards of proof to discrimination claims brought under the NYHRL." (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003))); *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1177 (2d Cir. 1996) ("New York courts have consistently looked to federal case law in expounding the [New York] Human Rights Law" (quoting *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180 (2d Cir. 1992), *cert. denied*, 506 U.S. 826 (1992))); *Spencer v. Int'l Shoppes, Inc.*, No 06 Civ. 2637, 2010 WL 1270173, at *11 n.3 (E.D.N.Y. Mar. 29, 2010) ("Discrimination claims under New York Executive Law § 296 are analyzed similarly to claims made under Title VII and § 1981.").

[12] To the extent that Plaintiff has brought a First Amendment retaliation claim, that claim is dismissed. "Where a public employee is alleging retaliation for the exercise of First Amendment free speech rights, he or she must initially demonstrate that: (1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action." *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (citations, alterations and internal quotation marks omitted). Here, Plaintiff has not presented evidence from which a jury could infer that she spoke out on a matter of public concern, suffered an adverse employment action or that her speech was a substantial or motivating factor in any action taken against her.

environment and disparate treatment." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006); *see also Das v. Consol. Sch. Dist. of New Britain*, 369 F. App'x 186, 188 (2d Cir. 2010). Once a plaintiff has established action under color of state law, the same analytical framework applies whether the disparate treatment claim is brought under § 1983 or Title VII. *Das*, 369 F. App'x at 188; *Demoret*, 451 F.3d at 149. Plaintiff did not specify the basis of her equal protection claim; however, because Plaintiff is *pro se*, the Court construes her papers liberally to allege that her equal protection rights were violated by discrimination on the basis of age and disability.

In order to establish a prima facie claim for disparate treatment, the plaintiff must demonstrate that: "(1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination." *Demoret*, 451 F.3d at 151. As the Court has previously discussed, Plaintiff cannot establish that she suffered an adverse employment action. Moreover, Plaintiff has not provided any evidence that would give rise to an inference of age or disability discrimination.[13] Nor can Plaintiff sustain a claim for hostile work environment. In order to establish a hostile work environment claim, a plaintiff must produce evidence that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

---

[13] Plaintiff makes general allegations in her opposition papers of unnamed teachers, who she claims were treated differently than her. (Pl. 56.1 Reply at 8 ("Newer and younger teachers seemed to have received favoritism on [sic] less students loads, stationary science equipped classrooms, textbooks and supplies."); *id.* at 22 ("Most of these teachers [in conventional science facilitated laboratory classrooms] appeared to be younger and appeared to not exhibit disabilities as did plaintiff."). However, general allegations of similarly situated individuals are insufficient to establish that the individuals referenced are similarly situated in all material respects. *See Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("A plaintiff relying on disparate treatment evidence 'must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000))).

create an abusive working environment." *Id.* at 149 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The plaintiff must show that the environment was objectively hostile and abusive, not merely that he or she perceived the environment to be abusive. *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003). Plaintiff has not presented any evidence from which a jury could infer that her work environment was objectively hostile, let alone permeated with any discriminatory animus. Plaintiff's equal protection claim is dismissed.

Having found no constitutional violation, Plaintiff's *Monell* claim is also dismissed. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.").

## III. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied. The Complaint is dismissed in its entirety, and the Clerk of Court is directed to close this case.

SO ORDERED:

MARGO K. BRODIE
United States District Judge

Dated: December 7, 2012
Brooklyn, New York